# Case No. 16-20699

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT
_____

JODIE KELLY,
Plaintiff - Appellee

v.

SETH A.NICHAMOFF,
Defendant- Appellant
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION, CASE NO. 4:15-CV-02563

## BRIEF OF APPELLANT
## SETH A. NICHAMOFF

RICHARD G. WILSON
KERR WILSON, P.C.
TEXAS BAR NO. 00794867
16800 IMPERIAL VALLEY DRIVE
SUITE 360
HOUSTON, TEXAS 77060
(281) 260-6304 TELEPHONE
(281) 260-6467 FACSIMILE
rwilson@tkalaw.com

**ATTORNEYS FOR APPELLANT
SETH A. NICHAMOFF**

# Case No. 16-20699

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

JODIE KELLY,
Plaintiff - Appellee

v.

SETH A.NICHAMOFF,
Defendant- Appellant

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION, CASE NO. 4:15-CV-02563

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1.    Jodie Kelly is an individual, a Singapore resident, and plaintiff – appellee.

2.    Seth A. Nichamoff is an individual, Texas resident, and defendant – appellant.

3.    Paul F. Rembach is an individual and Texas resident. While he is not a party to this appeal, Mr. Rembach is a defendant in the underlying case in the U.S. District Court for the Southern District of Texas-Houston Division.

4.     Jason Moore is an individual and Texas resident.  While he is not a party to this appeal, Mr. Moore is a defendant in the underlying case in the U.S. District Court for the Southern District of Texas- Houston Division.

5.     Legacy Automation, Power & Design, Inc. ("Legacy"), is Texas corporation. While it is not a party to this appeal, Legacy is a defendant in the underlying case in the U.S. District Court for the Southern District of Texas- Houston Division.

6.     Texas Lawyers' Insurance Exchange is a Texas insurer, and is Mr. Nichamoff's liability insurer.

7.     Nichamoff Law, P.C., is Seth A. Nichamoff's law firm.

8.     Attorneys for plaintiff - appellee:

At the trial court:

John B. Hall
Sarah M. Robbins
Locke Lord LLP
600 Travis, Suite 2800
Houston, Texas 77002-3095
Telephone: (713)226-1200
Telecopier: (713) 223-3717
jhall@lockelord.com

On appeal:

Chris Dove
Locke Lord LLP
2800 JPMorgan Chase Tower
600 Travis
Houston, Texas 77002
Telephone: (713) 226-1314
Facsimile: (713) 229-2613
cdove@lockelord.com

9.     Attorneys for defendants - appellees:

At the trial court:

Richard G. Wilson
KERR WILSON, P.C.
16800 Imperial Valley, Suite 360
Houston, Texas 77060
(281) 260-6304 Telephone
(281) 260-6467 Facsimile
rwilson@tkalaw.com

On appeal:

Richard G. Wilson
KERR WILSON, P.C.
16800 Imperial Valley, Suite 360
Houston, Texas 77060
(281) 260-6304 Telephone
(281) 260-6467 Facsimile
rwilson@tkalaw.com

Respectfully submitted,


By:   /s/ *Richard G. Wilson*
          Richard G. Wilson

Attorney for Appellant
Seth A. Nichamoff

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Seth A. Nichamoff requests oral argument.  This case concerns the extent of Texas' attorney immunity defense announced in *Cantey Hanger, L.L.P. v. Byrd*, 467 S.W.3d 477 (Tex. 2015).  One of the issues presented to this Court is whether attorney immunity in Texas extends outside the litigation context to protect attorneys performing transactional work.  Oral argument may help the Court answer important questions occasioned by the briefs, but not specifically answered in those documents.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES ....................................................i

STATEMENT REGARDING ORAL ARGUMENT ..........................................iv

TABLE OF CONTENTS .................................................................................v

TABLE OF AUTHORITIES ......................................................................... vii

JURISDICTIONAL STATEMENT.....................................................................1

STATEMENT OF ISSUES ...............................................................................2

STATEMENT OF THE CASE...........................................................................3

A.    In the Original Complaint, Ms. Kelly Makes
it Clear that Mr. Nichamoff Represented the Other
Parties in a Business Deal. ................................................................3

B.    Mr. Nichamoff Moves to Dismiss Under Rule
12(b)(6) Relying on Texas' Attorney Immunity
Defense.............................................................................................5

C.    Ms. Kelly Amends the Complaint to Define
Defendants to Include Mr. Nichamoff. ..............................................7

D.    Ms. Kelly Files Her Second Amended Complaint,
and the Court Applies Mr. Nichamoff's Motion to
Dismiss to the Second Amended Complaint. ......................................7

E.    The Court Denies Mr. Nichamoff's Motion to Dismiss...............................8

SUMMARY OF ARGUMENT ..........................................................................9

ARGUMENTS AND AUTHORITIES................................................................11

A.    Attorneys Have Been Protected from Suits by Third Parties
for Many Years. ..............................................................................11

**B.**  *Cantey Hanger* **Gives One Name to the Defense- Attorney Immunity.** ...................................................................................14

**C.**  **Cases Clearly Establish that Attorney Immunity Extends to Conduct Unrelated to Litigation.** ...............................................15

     1.   The Texas Supreme Court Has Applied the Attorney Immunity Defense to Conduct Unrelated to Litigation. ....................16

     2.   Texas' Intermediate Appellate Courts Have Applied the Attorney Immunity Defense to Conduct Unrelated to Litigation. ..........................................................................17

     3.   This Court Has Applied the Attorney Immunity Defense Outside Litigation. ...............................................................19

**D.**  **Attorney Immunity Extends to Mr. Nichamoff's Conduct as Alleged in the Complaint, and Mr. Nichamoff Should be Dismissed from this Suit.** ............................................................20

     1.   The Attorney Immunity Defense Applies to all Attorneys, as Long as they were not also Representing the Claimant in the same Transaction. .................................................20

     2.   Mr. Nichamoff Should be Dismissed Because the Second Amended Complaint Establishes he is Protected by the Attorney Immunity Defense. ..............................................22

**CONCLUSION** ...................................................................................27

**CERTIFICATE OF SERVICE** ...........................................................29

**CERTIFICATE OF COMPLIANCE** ...................................................30

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937,
173 L. Ed. 2d 868 (2009) ............................................................................ 22, 23, 26

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544,
127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...................................................... 22, 23

*FDIC v. Abraham*, 137 F.3d 264 (5th Cir. 1998) .............................................. 19, 20

*Gonzalez v. Kay,* 577 F.3d 600 (5th Cir. 2009) ....................................................... 23

*Hux v. S. Methodist Univ.*, 819 F.3d 776 (5th Cir. 2016) ....................................... 16

*Iqbal v. Bank of Am., N.A.*, 559 Fed. Appx. 363, 2014 U.S. App.
LEXIS 5089, 2014 WL 1017101 (5th Cir. 2014) ............................................. 20, 21

*Jones v. Alcoa, Inc.*, 339 F.3d 359 (5th Cir. 2003) ................................................. 24

*Lassberg v. Bank of America, N.A.*, 2016 U.S. App. LEXIS 15437
(5th Cir. August 23, 2016) ....................................................................................... 20

*Mott v. Mitsubishi International Corp.*, 636 F.2d 1074 (5th Cir. 1981) ................. 17

*Superior Crewboats, Inc. v. Primary P & I Underwriters*
(*In re Superior Crewboats, Inc.*), 374 F.3d 330 (5th Cir. 2004) ............................ 24

*Taco Bell Corp. v. Cracken*, 939 F. Supp. 528 (N.D. Tex. 1996) .......................... 14

*Thompson v. Deutsche Bank Nat'l Trust Co.*,
775 F.3d 298 (5th Cir. 2014) ................................................................................... 24

*Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341 (5th Cir. 2016) .................... 1, 8, 11

*U.S. v. Lamm*, 392 F3d 130 (5th Cir. 2004) ..................................................... 20 n. 3

*Wright v. Excel Paralubes*, 807 F.3d 734 (5th Cir. 2015) ...................................... 17

### T<small>EXAS</small> C<small>ASES</small>

*Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398
(Tex. App.—Houston [1st Dist.] 2005, pet. denied) ..................................10, 11, 13

*Barcelo v. Elliott*, 923 S.W.2d 575 (Tex. 1996) ............ 9, 10, 12, 13, 14, 16, 17, 21

*Bradt v. West*, 892 S.W.2d 56 (Tex. App.—Houston
[1st Dist.] 1994, writ denied) ....................................................................12, 13, 14

*Butler v. Lilly,* 533 S.W.2d 130 (Tex. App.—Houston
[1st Dist.] 1976, writ dism'd)..............................................................................12, 13

*Campbell v. Mortg. Elec. Registration Sys.*, 2012 Tex. App. LEXIS 4030
(Tex. App.—Austin May 18, 2012, pet. denied).....................................................18

*Cantey Hanger, L.L.P. v. Byrd*, 467 S.W.3d 477
(Tex. 2015) ...................................................... iv, 8, 9, 13, 14, 15, 16, 22, 25, 26, 27

*Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429
(Tex. App.—Houston [14th Dist.] 2000, pet. denied) ...............................12, 13, 14

*Coastal Bank SSB v. Chase Bank of Tex., N.A.*, 135 S.W.3d 840
(Tex. App.—Houston [1st Dist.] 2004, no pet.) .....................................................21

*Cunningham v. Tarski*, 365 S.W.3d 179
(Tex. App.—Dallas 2012, pet. denied) ..................................................................25

*JJJJ Walker, LLC v. Yollick*, 447 S.W.3d 453
(Tex. App.—Houston [14th Dist.] 2014, pet. denied) ............................................27

*Kruegel v. Murphy*, 126 S.W. 343
(Tex. Civ. App.—Dallas 1910, writ ref'd) ............................................................12

*Martin v. Trevino*, 578 S.W.2d 763 (Tex. Civ. App.—Corpus Christi
1978, writ ref'd n.r.e.) ...........................................................................................12

*McCamish v. F. E. Appling Interests*, 991 S.W.2d 787 (Tex. 1999)................. 12-13

*Morris v. Bailey*, 398 S.W.2d 946 (Tex. Civ. App.—Austin 1966,
writ ref'd n.r.e.) .................................................................................................12

*Rawhide-Mesa Partners, Ltd. v. Brown McCaroll, L.L.P.*,
344 S.W.3d 56 (Tex. App.—Eastland 2011, no pet.) ................................ 17-18, 18

*Reagan Nat'l Adver. of Austin, Inc. v. Hazen*, 2008 Tex. App. LEXIS 5826,
2008 WL 2938823 (Tex. App.—Austin July 29, 2008, no pet.) ......................19, 21

*Renfroe v. Jones & Assocs.*, 947 S.W.2d 285
(Tex. App.—Fort Worth 1997, writ denied) ....................................................11, 13

*Russell v. Clark*, 620 S.W.2d 865
(Tex. App.—Dallas 1981, writ ref'd n.r.e.)............................................................12

*Thomas v. Bracey*, 940 S.W.2d 340
(Tex. App.—San Antonio 1997, no writ) .............................................................12

# JURISDICTIONAL STATEMENT

This case was filed in the U.S. District Court for the Southern District of Texas- Houston Division under 28 U.S.C. § 1332(a).  ROA.9.  Jodie Kelly is an individual and Singapore resident.  *See id*.  All of the defendants, including Appellant Seth A. Nichamoff, are Texas residents.  ROA.8-9; ROA.189-190.  The complaint has always sought damages in excess of $75,000.  ROA.9, ROA.120, ROA.190, ROA.314.

On October 13, 2015, Mr. Nichamoff filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  ROA.51.  After the motion to dismiss was filed, Ms. Kelly moved for and was able to amend her complaint twice before Mr. Nichamoff's motion was decided.  ROA.4-5, at docket nos. 17 and 26.  On September 21, 2016, the district court denied Mr. Nichamoff's motion to dismiss. ROA.303.  The motion to dismiss was based on attorney immunity, and Mr. Nichamoff filed a notice of appeal on October 18, 2016, appealing a collateral order under 28 U.S.C. § 1291 and *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 348 (5th Cir. 2016).  ROA.372.

## <u>STATEMENT OF ISSUES</u>

1.      Did the district court err when it ruled that Texas' attorney immunity defense is limited to litigation and some, but not all, third party claims outside the litigation context?

2.      Did the district court err when it ruled Mr. Nichamoff was not entitled to dismissal in this case based on the attorney immunity defense?

## STATEMENT OF THE CASE

Ms. Kelly filed this suit on September 4, 2015, by filing Plaintiff's Original Complaint.  ROA.8.

### A.  In the Original Complaint, Ms. Kelly Makes it Clear that Mr. Nichamoff Represented the Other Parties in a Business Deal.

In Plaintiff's Original Complaint, Ms. Kelly claimed the suit was based on Defendants' egregious misconduct in connection with Ms. Kelly's acquisition of shares in Legacy.  ROA.9. Ms. Kelly defined Mr. Rembach and Mr. Moore as "Defendants".  *See id.*  Mr. Nichamoff was not included in that definition.  *See id.*

Mr. Nichamoff was mentioned separately and Ms. Kelly alleged, "Nichamoff was Rembach's attorney."  ROA.10.  Ms. Kelly alleged Mr. Nichamoff knew that she had a close, intimate personal relationship with Mr. Rembach.  *See id.*  Ms. Kelly alleged the Defendants knew she would rely on information coming from Mr. Rembach, either directly or through Mr. Nichamoff or Mr. Moore.  ROA.11.

The complaint focuses on a business deal in which Ms. Kelly alleges she would buy 1,000,000 shares of Legacy stock, and after a series of transactions in which other shareholders were bought out Mr. Rembach and Ms. Kelly would both end up owning 1,055,000 shares in Legacy.  ROA.11.  Ms. Kelly alleges her acquisition of shares in Legacy was memorialized in two documents, a stock transfer agreement through which she received 110,000 shares from Mr. Rembach and a stock purchase agreement through which she received 776,944.44 from Legacy.

ROA.13.  Both agreements were signed May 19, 2015.  *See id.*  Ms. Kelly alleges she received 113,055.56 shares outside these two agreements to get her to 1,000,000 shares.  *See id.*

Ms. Kelly alleges Mr. Nichamoff and Mr. Moore assisted in preparing financial statements, balance sheets, and the agreements with full knowledge that the documents were inaccurate and warranties made by Mr. Rembach in the stock transfer agreement were untrue.  ROA.13.

Ms. Kelly alleges that after she paid Mr. Rembach for her shares, which were not what they were represented to be because Legacy was not what it was represented to be, Mr. Rembach paid or caused Legacy to pay Mr. Nichamoff part of the proceeds in exchange for his participation in a conspiracy to defraud Ms. Kelly. ROA.14.  Mr. Nichamoff is alleged, in the fraud cause of action, to have received payments not just for his fee, but additional payments as a result of conspiring to defraud Ms. Kelly.  ROA.18.

In the fiduciary duty cause of action, Mr. Nichamoff along with Mr. Moore is alleged to have misrepresented the percentage of Legacy shares Ms. Kelly was purchasing, the value of Legacy, the value of her shares, the financial condition of Legacy, the accuracy of the financial statements and balance sheet, and the nature of transactions between Mr. Rembach and Legacy.  ROA.20.  Mr. Nichamoff is

alleged to have previously acted as counsel for Ms. Kelly, thereby increasing the trust she placed in Defendants. *See id*.

In the aiding and abetting cause of action, Mr. Nichamoff is alleged to have known Mr. Rembach's conduct was fraudulent and breached fiduciary duties, but to have assisted or encouraged Mr. Rembach with the intent to assist him. ROA.22. Mr. Nichamoff is alleged to have helped Mr. Rembach manipulate the shares of Legacy so that Ms. Kelly would not receive 50% of the shares in the company. *See id*. Mr. Nichamoff is also alleged to have postponed providing Ms. Kelly with documents that revealed Defendants' fraud until after the closing in order to conceal the conduct long enough to obtain Ms. Kelly's money. *See id*.

**B.    Mr. Nichamoff Moves to Dismiss Under Rule 12(b)(6) Relying on Texas' Attorney Immunity Defense.**

In response to the complaint, Mr. Nichamoff filed a motion to dismiss. ROA.51. Mr. Nichamoff moved to dismiss for failure to state a claim because Ms. Kelly made it clear Mr. Nichamoff was the attorney for the other parties to the transaction. ROA.56. Mr. Nichamoff argued that Texas' attorney immunity defense entitled him to dismissal based on the allegations in Ms. Kelly's complaint. *See id*.

In the motion, Mr. Nichamoff called attention to his not being included in the definition of Defendants, but nonetheless included allegations against the Defendants in the motion to dismiss as though those allegations were against him. ROA.57-58. Mr. Nichamoff considered, as allegations against him, Ms. Kelly's

allegation that Defendants provided Ms. Kelly with financial statements and information about Legacy, and the Defendants represented that Ms. Kelly was buying 50% of the stock in Legacy when that was not true. *See id.* Mr. Nichamoff also included the allegation that Defendants falsely represented that Ms. Kelly would be buying 1,000,000 shares of Legacy stock; 110,000 non-voting shares owned by employees would be purchased, converted, and divided evenly between Mr. Rembach and Ms. Kelly; and 20,000 shares owned by Mr. Rembach's children would be surrendered to Legacy, leaving Mr. Rembach and Ms. Kelly as 50/50 owners. ROA.58.

Mr. Nichamoff also relied on Ms. Kelly's allegations that the Defendants:

a. Transferred real estate from Legacy to Mr. Rembach for no consideration before Ms. Kelly bought her shares,

b. Created false contributions by Mr. Rembach to Legacy and claimed those contributions had to be repaid even though those contributions were not reflected on financial documents provided to Ms. Kelly prior to the closing,

c. Represented Ms. Kelly was purchasing 50% of Legacy and concealed that she was not buying 50% of the shares of Legacy until after the closing,

d. Falsely represented the financial statements were accurate for the purpose of convincing Ms. Kelly to buy Legacy stock when those financial statements were not accurate, and

e. Exaggerated the capabilities of Legacy, the value of patents held by Legacy and Mr. Rembach, and the value of work in bid or in progress.

ROA.58.

**C.    Ms. Kelly Amends the Complaint to Define Defendants to Include Mr. Nichamoff.**

On November 3, 2015, Ms. Kelly amended her complaint. ROA.119. The key difference between the original complaint and Ms. Kelly's first amended complaint is Ms. Kelly's decision to define Defendants to include Mr. Nichamoff. ROA.120. In paragraphs 30-32, Ms. Kelly added allegations that Defendants coordinated their actions as part of a common design to obtain Ms. Kelly's money and deprive her of the value of the stock she believed she was purchasing. ROA.126. Ms. Kelly alleges the Defendants' conduct was knowing and undertaken to achieve the purpose of separating her from her money. *See id*.

There are no other important changes to the facts alleged.[1] *Compare* ROA.8-25 to ROA.119-137.

**D.    Ms. Kelly Files Her Second Amended Complaint, and the Court Applies Mr. Nichamoff's Motion to Dismiss to the Second Amended Complaint**.

On January 14, 2016, Ms. Kelly sought leave to file her second amended complaint. ROA.160. The next day, at the initial scheduling conference, the district court granted leave and noted that Mr. Nichamoff's motion to dismiss would be accepted as his 12(b)(6) motion to dismiss Plaintiff's Second Amended Complaint, which was the live pleading. ROA.4.

---

[1] Ms. Kelly also makes a general allegation that she is entitled to attorney's fees outside the Texas Civil Practice & Remedies Code. ROA.136.

In the second amended complaint, Ms. Kelly added Legacy as a defendant. ROA.190.  Ms. Kelly also sought the rescission of her purchase of  Legacy stock from Mr. Rembach and Legacy.  ROA.206.

There are no other important changes to the facts alleged.  *Compare* ROA.119-137 to ROA.189-208.

**E.     The Court Denies Mr. Nichamoff's Motion to Dismiss.**

On August 3, 2016, Ms. Kelly sought leave to amend her complaint a third time.  ROA.253.  Mr. Nichamoff opposed the motion for leave pointing out that his motion to dismiss was still pending on Ms. Kelly's second amended complaint. ROA.286.

On September 21, 2016, the district court denied Mr. Nichamoff's motion to dismiss.  ROA.303.[2]

In its order, the district court recognized the attorney immunity defense in *Cantey Hanger, L.L.P. v. Byrd*, 467 S.W.3d 477 (Tex. 2015).    ROA.307. The district court then ruled the Texas Supreme Court disclaimed applying the attorney immunity defense to conduct unrelated to litigation.  ROA.308.  The district court recognized this Court's dismissal of claims against an attorney under Rule 12(b)(6) in *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341 (5th Cir. 2016), but found that

---

[2] In a footnote, the district court mentioned the pending motion for leave, noted the basis for Mr. Nichamoff's opposition, and determined Mr. Nichamoff's objection was mooted by the district court's order denying the motion to dismiss.  The third amended complaint was filed after the motion to dismiss was denied.  ROA.6.

-8-

opinion did not reach the question of whether the Texas attorney immunity defense extended to conduct unrelated to litigation. ROA.310. The district court then distinguished cases from the Texas Supreme Court, Texas' intermediate appellate courts, federal district courts in Texas, and this Court, all of which applied the attorney immunity defense to conduct unrelated to litigation. ROA.310-11. The district court ruled that four such cases took place in a "litigation-like context." *See id*. The district court distinguished the fifth case, a Texas Supreme Court case, in a footnote which characterized *Barcelo v. Elliott* as "in the estate planning context." ROA.310 n. 12. The district court distinguished another case based on the different burdens of proof for motions to dismiss in federal court as opposed to motions for summary judgment in Texas state court. ROA.311-12.

After distinguishing all those cases, the district court ruled there was an "absence of any authority applying attorney immunity under similar circumstances," and denied Mr. Nichamoff's motion. ROA.312.

Mr. Nichamoff filed his notice of appeal October 18, 2016. ROA.372.

## SUMMARY OF ARGUMENT

The rationale behind Texas' attorney immunity defense is that an attorney owes a duty of care only to his or her client, not to third parties who may have been damaged by the attorney's representation of the client. *Cantey Hanger, L.L.P. v. Byrd*, 467 S.W.3d at 481 (citing *Barcelo v. Elliott*, 923 S.W.2d 575, 577 (Tex.

1996)).  In fulfilling that duty, public policy supports attorneys having the utmost freedom in representing the client.  *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).  Put simply, suits brought against attorneys by non-parties are disallowed because, "This will ensure that attorneys may in all cases zealously represent their clients without the threat of suit from third parties compromising that representation."  *Barcelo v. Elliott*, 923 S.W.2d at 578-79.

There should not be two sets of rules for attorneys representing clients.  The rationale behind attorney immunity applies to conduct unrelated to litigation as well.  A client looking to purchase or sell property or an interest in a business is entitled to the same duty of care, and the same zealous representation directed toward maximizing the client's return on investment.  As a result, the attorney immunity defense applies to attorneys representing clients when the work is unrelated to litigation.

Here, Ms. Kelly's allegations establish that Mr. Nichamoff was representing Legacy and Mr. Rembach in the sale of Legacy stock to Ms. Kelly.  Mr. Nichamoff was not Ms. Kelly's lawyer.  Mr. Nichamoff owed a duty of care to Legacy and Mr. Rembach.  Ms. Kelly seeks to hold Mr. Nichamoff liable for actions taken in the scope of representing his client, and that were not foreign to the duties of an attorney.  Under *Cantey Hanger*, Mr. Nichamoff is immune from suit by Ms.

-10-

Kelly, the district court erred in denying Mr. Nichamoff's motion to dismiss, and this Court should reverse the district court and render judgment that Mr. Nichamoff is dismissed from Case No. 4:15-CV-02563.

ARGUMENT & AUTHORITIES

This appeal presents an appealable collateral order- the district court's denial of Mr. Nichamoff's motion to dismiss for failure to state a claim based on attorney immunity. *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 348 (5th Cir. 2016). In *Troice*, this Court announced the following standard of review for a case similar to this one:

> We review de novo a district court's denial of a motion to dismiss based on immunity. *See Doe v. Robertson*, 751 F.3d 383, 386 (5th Cir. 2014). We also review de novo a district court's interpretation of state law. *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 492 (5th Cir. 2006). We are "bound to answer the question the way the state's highest court would resolve the issue." *Occidental Chem. Corp. v. Elliott Turbomachinery Co.*, 84 F.3d 172, 175 (5th Cir. 1996).

*Troice v. Proskauer Rose, L.L.P.*, 816 F.3d at 345.

## A.     Attorneys Have Been Protected from Suits by Third Parties for Many Years.

Texas appellate courts have routinely held an attorney is protected from suits filed by a non-client when those suits are based on the attorney's work in connection with representing a client. *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 288 (Tex. App.—Fort Worth 1997, writ

denied); *Bradt v. West*, 892 S.W.2d 56, 71-72 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

This protection has existed for over 100 years. *Kruegel v. Murphy*, 126 S.W. 343, 345 (Tex. Civ. App.—Dallas 1910, writ ref'd). Over time, the protection has been described several ways. When the claim asserted against the lawyer was slander or libel, the protection has been characterized as a privilege or immunity. *Thomas v. Bracey*, 940 S.W.2d 340, 343 (Tex. App.—San Antonio 1997, no writ); *Russell v. Clark*, 620 S.W.2d 865, 869(Tex. App.—Dallas 1981, writ ref'd n.r.e.); *Butler v. Lilly,* 533 S.W.2d 130, 131-34 (Tex. App.—Houston [1st Dist.] 1976, writ dism'd). Outside defamation, courts called it lack of privity and found no duty to third parties to the attorney-client relationship. *Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 442 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *Martin v. Trevino*, 578 S.W.2d 763, 771 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.); *Morris v. Bailey*, 398 S.W.2d 946, 947 (Tex. Civ. App.—Austin 1966, writ ref'd n.r.e.).

If one questions whether the privity defense is attorney immunity, the question should be answered by looking to *Cantey Hanger*. The Texas Supreme Court's analysis of the attorney immunity defense begins:

> Texas common law is well settled that an attorney does not owe a professional duty of care to third parties who are damaged by the attorney's negligent representation of a client. *Barcelo v. Elliott*, 923 S.W.2d 575, 577 (Tex. 1996); *see also McCamish, Martin, Brown &*

> *Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 792 (Tex. 1999) (explaining that a lack of privity precludes attorneys' liability to non-clients for legal malpractice).

*Cantey Hanger, L.L.P. v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). *See also, Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d at 405 (explaining, "Perhaps as an offshoot of its privity jurisprudence, Texas case law has discouraged lawsuits against an opposing counsel if the lawsuit is based on the fact that counsel represented an opposing party in a judicial proceeding.").

Regardless of the label used by the courts, the rationale has remained constant. An attorney owes a duty of care only to his or her client, not to third parties who may have been damaged by the attorney's representation of the client. *Barcelo v. Elliott*, 923 S.W.2d at 577; *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d at 405; *Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d at 442. In fulfilling that duty, public policy supports attorneys having the utmost freedom in representing the client. *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d at 441; *Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 288 (Tex. App.—Fort Worth 1997, writ denied); *Bradt v. West*, 892 S.W.2d at 71; *Butler v. Lilly,* 533 S.W.2d at 131. Put simply, suits brought against attorneys by non-parties are disallowed because, "This will ensure that attorneys may in all cases zealously represent their clients without the threat of

suit from third parties compromising that representation." *Barcelo v. Elliott*, 923 S.W.2d at 578-79. *See also, Chapman Children's Trust v. Porter & Hedges, L.L.P.,* 32 S.W.3d at 440 ("an attorney's knowledge that he may be sued . . . would favor tentative rather than zealous representation of the client, which is contrary to professional ideals and public expectations.")(citing *Taco Bell Corp. v. Cracken*, 939 F. Supp. 528, 532 (N.D. Tex. 1996), and *Bradt v. West*, 892 S.W.2d 56, 72 (Tex. App.—Houston [1st Dist.] 1994, writ denied)).

**B.    *Cantey Hanger* Gives One Name to the Defense- Attorney Immunity.**

In 2015, the Texas Supreme Court grappled with what was referred to as the fraud exception to attorney immunity. *Cantey Hanger, L.L.P. v. Byrd*, 467 S.W.3d at 483. After providing a history of the immunity defense and the use of differing rules by courts that have considered the defense and exceptions to it, the Texas Supreme Court established the following standard:

> Fraud is not an exception to attorney immunity; rather, the defense does not extend to fraudulent conduct that is outside the scope of an attorney's legal representation of his client, just as it does not extend to other wrongful conduct outside the scope of representation. An attorney who pleads the affirmative defense of attorney immunity has the burden to prove that his alleged wrongful conduct, regardless of whether it is labeled fraudulent, is part of the discharge of his duties to his client.

*Cantey Hanger, L.L.P. v. Byrd*, 467 S.W.3d at 484.

The Texas Supreme Court then employed a two-part test and found the attorneys in that case were immune from suit because: (1) the lawyer's action was

within the scope of representing a client, and (2) was not foreign to the duties of an attorney. *Cantey Hanger, L.L.P. v. Byrd*, 467 S.W.3d at 485.

The Texas Supreme Court opted for a bright-line rule and did not split hairs by looking into whether the attorney's conduct required the skill, education, and experience possessed by an attorney. *Id*. The Texas Supreme Court also did not focus on the outcome or effect of the conduct, but instead elected to focus on the type of conduct. *Id*. The type of conduct, even if it is wrongful, is still protected if the lawyer's action was within the scope of representing a client. *Id*.

**C.    Cases Clearly Establish that Attorney Immunity Extends to Conduct Unrelated to Litigation.**

The two step test employed by the Texas Supreme Court in *Cantey Hanger* does not require that the conduct be taken in the course of representing a client in litigation. *Cantey Hanger, L.L.P. v. Byrd*, 467 S.W.3d at 485. The majority could have limited its holding, but did not noting:

> Because we conclude that Cantey Hanger's alleged conduct falls within the scope of its duties in representing its client in litigation, we need not consider the attorney-immunity doctrine's application to an attorney's conduct that is unrelated to litigation but nevertheless falls within the ambit of client representation and "requires the office, professional training, skill, and authority of an attorney."

*Cantey Hanger, L.L.P. v. Byrd*, 467 S.W.3d at 482 n. 6 (citations omitted). In the same note, the majority also cited two cases outside the litigation context and commented, "We cite *Campbell* and *Hazen* merely as examples of cases in which

courts have applied attorney immunity (or indicated that it could apply) outside the litigation context." *Id.* The Court did not criticize those opinions. *Id.*

In denying Mr. Nichamoff's motion to dismiss, the district court ruled *Cantey Hanger* expressly disavowed addressing conduct outside the litigation context. ROA.309. The district court does not appear to have engaged in an *Erie* analysis to determine whether the Texas Supreme Court would apply the attorney immunity defense to conduct unrelated to litigation. ROA.303-312. Instead the district court distinguished Fifth Circuit, Texas Supreme Court, and Texas intermediate appellate court opinions that did apply the attorney immunity defense outside the litigation context and denied the motion to dismiss. ROA.310-311.

1.    The Texas Supreme Court Has Applied the Attorney Immunity Defense to Conduct Unrelated to Litigation.

In applying Texas law, this Court looks first to the decisions of the Texas Supreme Court. *Hux v. S. Methodist Univ.*, 819 F.3d 776, 780 (5th Cir. 2016).

*Barcelo v. Elliott* concerned a trust that was invalidated by a Texas court, and the resulting malpractice suit filed by the intended beneficiaries of the trust. *Barcelo v. Elliott*, 923 S.W.2d at 576. The absence of an adversarial context was important to the district court. ROA.312. In *Barcelo v. Elliott*, Texas Supreme Court recognized estate planning is a circumstance where other courts have reasoned that the interests of the client and the beneficiaries are necessarily aligned. *Barcelo v. Elliott*, 923 S.W.2d at 578. Still, given the potential conflicts

that could arise in such a circumstance where the parties appear aligned, the Texas Supreme Court rejected a case-by-case analysis and adopted a bright-line rule denying a cause of action to parties the attorney did not represent in the transaction. *Id*. *Barcelo v. Elliott* was not overruled by *Cantey Hanger*. Following Fifth Circuit precedent, this Court should recognize that *Barcelo v. Elliott* extends attorney immunity to conduct unrelated to litigation.

2.  Texas' Intermediate Appellate Courts Have Applied the Attorney Immunity Defense to Conduct Unrelated to Litigation.

While *Cantey Hanger* appears to consolidate the privity barrier and immunity under the attorney immunity defense, if one concludes the privity barrier is a separate defense, there is no precedent from the Texas Supreme Court. If the Texas Supreme Court has not ruled on the issue, this Court is guided in making an *Erie* guess by other authorities, including decisions of intermediate state appellate courts. *Wright v. Excel Paralubes*, 807 F.3d 730, 734 (5th Cir. 2015). A decision of a court of appeals is controlling on questions of state law in this Court, absent a strong indication that the Texas Supreme Court would decide the issue differently. *Mott v. Mitsubishi International Corp.*, 636 F.2d 1073, 1074 (5th Cir. 1981).

Attorney immunity has been applied by Texas intermediate appellate courts to protect attorneys outside litigation. In *Rawhide-Mesa Partners, Ltd. v. Brown McCaroll, L.L.P.*, Brown McCarroll represented the tenant in lease negotiations with Rawhide, the landlord. *Rawhide-Mesa Partners, Ltd. v. Brown McCaroll,*

-17-

*L.L.P.*, 344 S.W.3d 56, 58 (Tex. App.—Eastland 2011, no pet.). The law firm had previously worked for a partner of Rawhide. *Id.* After the tenant defaulted on the lease, Rawhide sued Brown McCarroll, the tenant's lawyers. *Rawhide-Mesa Partners, Ltd. v. Brown McCaroll, L.L.P.*, 344 S.W.3d at 59.

There, the appellate court considered the arguments of the other party to the transaction that the law firm committed fraud while representing its client and rejected the argument after recognizing that by permitting such a claim, "It would also place the lawyer in the impossible situation of representing two opposing sides in a business transaction." *Rawhide-Mesa Partners, Ltd. v. Brown McCaroll, L.L.P.*, 344 S.W.3d at 62. The court also recognized that in the negotiation of the contract with Rawhide, the lawyers were adversarial to Rawhide because they represented the other party. *Rawhide-Mesa Partners, Ltd. v. Brown McCaroll, L.L.P.*, 344 S.W.3d at 62.

In *Campbell v. Mortgage Electronic Registration Systems, Inc.*, the court of appeals held that attorneys hired to assist a mortgage beneficiary in the non-judicial foreclosure of real property were immune from the borrowers' suit for wrongful foreclosure. *Campbell v. Mortgage Electronic Registration Systems, Inc.*, 2012 Tex. App. LEXIS 4030, *18, 2012 WL 1839357 (Tex. App.—Austin May 18, 2012, pet. denied).

In *Reagan Nat'l Adver. of Austin, Inc. v. Hazen*, the attorney provided advice to his clients about a billboard on their property. *Reagan Nat'l Adver. of Austin, Inc. v. Hazen*, 2008 Tex. App. LEXIS 5826, *2, 2008 WL 2938823 (Tex. App.— Austin July 29, 2008, no pet.). Reagan argued the attorney was not immune because his conduct was not in the course of litigation. *Reagan Nat'l Adver. of Austin, Inc. v. Hazen*, 2008 Tex. App. LEXIS 5826, *22-23. The Austin Court of Appeals commented, in response to this argument, "Moreover, while it is true that many of the cases addressing the attorney-immunity doctrine arise in the context of pending litigation, neither the case law, nor the doctrine's underlying policy rationales, are limited to that setting." *Id*. The court then held attorney immunity applied outside litigation, its opinion reading, "We disagree that Hazen is not protected by attorney immunity merely because his complained-of conduct took place before Reagan filed its lawsuit." *Reagan Nat'l Adver. of Austin, Inc. v. Hazen*, 2008 Tex. App. LEXIS 5826, *23.

3.    This Court Has Applied the Attorney Immunity Defense Outside Litigation.

This is a stare decisis court. *FDIC v. Abraham*, 137 F.3d 264, 268 (5th Cir. 1998). One aspect of that doctrine is the rule that one panel of this Court cannot disregard a decision of a prior panel. *Id*. This Court has previously explained, when a party argued the attorney immunity defense did not apply outside litigation, "The Iqbals argue that attorney immunity applies only in the litigation context, but

that stance is not in line with Texas law." *Iqbal v. Bank of Am., N.A.*, 559 Fed. Appx. 363, 365, 2014 U.S. App. LEXIS 5089, *5-6, 2014 WL 1017101 (5th Cir. 2014). *See also, Lassberg v. Bank of America, N.A.*, 2016 U.S. App. LEXIS 15437 * 8 (5th Cir. August 23, 2016)(noting two unpublished decisions in which this Court has found a law firm was protected by attorney immunity for actions taken outside litigation).[3]

Mr. Nichamoff believes it is clear that Texas' attorney immunity defense applies to conduct unrelated to litigation, or as some have described it, conduct outside the litigation context.

**D.    Attorney Immunity Extends to Mr. Nichamoff's Conduct as Alleged in the Complaint, and Mr. Nichamoff Should be Dismissed from this Suit**.

1.    The Attorney Immunity Defense Applies to all Attorneys, as Long as they were not also Representing the Claimant in the same Transaction.

In this case, the district court denied the motion to dismiss because "the transaction at issue here was wholly unrelated to litigation and did not arise in an adversarial context." ROA.312. Refusing to extend the attorney immunity defense to conduct unrelated to litigation and not in an adversarial context puts an unnecessary limit on the defense and is vague.

If this Court applied the district court's rule, one would need to determine where an adversarial context begins.  Attorneys for parties on opposite sides of a

---

[3]  Mr. Nichamoff acknowledges these opinions are not published, but this Court has previously found its prior unpublished opinions instructive. *U.S. v. Lamm*, 392 F3d 130, 133 (5th Cir. 2004).

commercial transaction are looking to help their client obtain the most out of a deal and just because both sides are looking to go into business together does not mean the negotiations are not adversarial. *See Coastal Bank SSB v. Chase Bank of Tex., N.A.*, 135 S.W.3d 840, 843 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (describing as adversarial the negotiations between two banks to participate in a syndicate to lend money to a single borrower). Placing this factual limit on the attorney immunity defense would require courts to make a case by case determination of what is adversarial, and the Texas Supreme Court prefers a bright-line rule. *See Barcelo v. Elliott*, 923 S.W.2d 578 ("We believe the greater good is served by preserving a bright-line privity rule which denies a cause of action to all beneficiaries whom the attorney did not represent.").

Further, placing a limit on the attorney immunity defense separates attorneys based on their work. The attorney immunity defense's underlying policy rationales are not limited to litigation. *Iqbal v. Bank of Am., N.A.*, 559 Fed. Appx. at 365, 2014 U.S. App. LEXIS 5089, *5-6; *Reagan Nat'l Adver. of Austin, Inc. v. Hazen*, 2008 Tex. App. LEXIS 5826, *22-23. The Texas Supreme Court wants to "ensure that attorneys may in all cases zealously represent their clients without the threat of suit from third parties compromising that representation." *Barcelo v. Elliott*, 923 S.W.2d 575, 578-579 (Tex. 1996). A limit on the attorney immunity defense would allow some attorneys, particularly litigation attorneys, to zealously represent

their client.  *See Cantey Hanger, L.L.P. v. Byrd*, 467 S.W.3d at 484 (finding litigation work immune from suit).  In comparison, other attorneys, particularly transactional attorneys, may owe duties to the other party that conflict with their duty of zealous representation.  *See* ROA.312 (ruling Mr. Nichamoff, as the other side's attorney, is not immune from Ms. Kelly's claims arising out of her purchase of Legacy stock).

Texas does not favor limiting the attorney immunity defense to litigation, and some, but not all, transaction work.  If it is clear that an attorney is not representing the claimant, the attorney should be immune from liability to that third party if: (1) the lawyer's action was within the scope of representing a client, and (2) was not foreign to the duties of an attorney.  *Cantey Hanger, L.L.P. v. Byrd*, 467 S.W.3d at 485.

2. <u>Mr. Nichamoff Should be Dismissed Because the Second Amended Complaint Establishes he is Protected by the Attorney Immunity Defense.</u>

Turning to the allegations against Mr. Nichamoff, the test of pleadings under Rule 12(b)(6) balances a party's right to redress against the interests of all parties and the court in minimizing the expenditure of time, money, and resources.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 558, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  *Twombly* provides the new pleading standard for all civil actions, and it applies to all suits filed in federal court.  *Ashcroft v. Iqbal*, 556 U.S. 662, 684, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Factual allegations must be taken as true, even if doubtful. *Twombly,* 550 U.S. at 555. However, the rule that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555); *Gonzalez v. Kay,* 577 F.3d 600, 603 (5th Cir. 2009). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* Legal conclusions "must be supported by factual allegations." *Gonzalez v. Kay,* 577 F.3d at 603.

Upon identifying the well-pleaded factual allegations, a court determines whether they plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. at 678-79. The pleader must make allegations that take the claim from "conclusory" to "factual" and beyond "possible" to "plausible." *Bell Atl. Corp. v. Twombly,* 550 U.S. at 557. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556.

A defendant is entitled to dismissal under Rule 12(b)(6) if the plaintiff states a recognized claim, but at the same time establishes an affirmative defense that

entitles the defendant to dismissal because it is evident from the plaintiff's pleadings that the action is barred. *Thompson v. Deutsche Bank Nat'l Trust Co.*, 775 F.3d 298, 302 (5th Cir. 2014). While this right to dismissal pre-dates the plausible pleading standard, it still applies under the plausible pleading standard. *Thompson v. Deutsche Bank Nat'l Trust Co.*, 775 F.3d at 307. Where a successful affirmative defense appears on the face of the pleadings, the Fifth Circuit has applied an affirmative defense to dismiss claims under Rule 12(b)(6). *See, e.g., Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 336 (5th Cir. 2004) (directing the district court to dismiss the plaintiffs' claims); *Jones v. Alcoa, Inc*., 339 F.3d 359, 366 (5th Cir. 2003)(dismissing claims based on an affirmative defense).

Focusing on Ms. Kelly's factual allegations and not the conclusory statements as required by *Twombly*, the Second Amended Complaint begins by alleging, "Nichamoff was Rembach's attorney." ROA.191. Ms. Kelly further alleges Mr. Nichamoff and Mr. Moore assisted in preparing financial statements, balance sheets, and the stock transfer agreement for Legacy and Mr. Rembach. ROA.195. The Second Amended Complaint makes it clear Mr. Nichamoff was Mr. Rembach and Legacy's attorney, acted for those clients, and did not represent Ms. Kelly in the Legacy deal. ROA.191, 202.

Turning to his alleged actions, Mr. Nichamoff allegedly prepared documents, including the agreements selling the shares to Ms. Kelly. ROA.195. Mr. Nichamoff allegedly communicated to Ms. Kelly about the closing and the anticipated result. ROA.202. Mr. Nichamoff allegedly provided information and documents to Ms. Kelly. ROA.194.

Preparing documents and transmitting information are actions that an attorney would ordinarily perform for a client. *See Cantey Hanger, LLP v. Byrd*, 467 S.W.3d at 485 (finding "preparation of a bill of sale to facilitate transfer of an airplane awarded to its client in an agreed divorce decree was conduct in which an attorney engages to discharge his duties to his client" and was not "foreign to the duties of an attorney."); *Cunningham v. Tarski*, 365 S.W.3d 179, 189 (Tex. App.— Dallas 2012, pet. denied)(setting out the actions taken by the attorney defendant in the course and scope of representing the client, including transmitting documents to the plaintiff). So, the allegations establish Mr. Nichamoff was in the scope of representing his clients in the transaction.

Mr. Nichamoff's supposed reasons for doing what he did are made to sound bad, i.e., hiding assets, misrepresenting the value of the company, scheming to separate Ms. Kelly from her money. ROA.200-201. *See also*, ROA.196 ("Defendants agreed on a common design to obtain Kelly's money, while taking the actions described in this Complaint to deprive Kelly of the value of the stock

she believed she was purchasing.")  However, in deciding whether dismissal is appropriate, one disregards these conclusory statements and focuses on the facts alleged.  *Ashcroft v. Iqbal*, 556 U.S. at 678.  This standard of review dovetails with *Cantey Hanger*, where one disregards the nature of the conduct and focuses only on the type of conduct.  *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d at 485.  If the type of conduct is in the scope of representing a client and is not foreign to the duties of an attorney, Mr. Nichamoff is immune.  *Id.*  As the Texas Supreme Court explained, "an attorney's conduct may be wrongful but still fall within the scope of client representation." *Cantey Hanger, L.L.P. v. Byrd*, 467 S.W.3d at 485.

Ms. Kelly's effort to label Mr. Nichamoff's fees as something else also does not change the outcome.  ROA.196. The factual allegation is Mr. Nichamoff was paid for his work.  *See id.*   Ms. Kelly's attempt to recast those payments as proceeds from participating in a conspiracy is a conclusory statement.  *See Ashcroft v. Iqbal*, 556 U.S. at 664 ("Several of his allegations--that petitioners agreed to subject him to harsh conditions as a matter of policy, solely on account of discriminatory factors and for no legitimate penological interest; that Ashcroft was that policy's 'principal architect'; and that Mueller was 'instrumental' in its adoption and execution--are conclusory and not entitled to be assumed true."). Ms. Kelly does not and cannot allege that Mr. Nichamoff owned shares in Legacy, or otherwise held an interest that would make Mr. Nichamoff a party to the

transaction and make his work foreign to the duties of an attorney. *See JJJJ Walker, LLC v. Yollick*, 447 S.W.3d 453, 470 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)(refusing to find the attorney immune from suit because signing the Letter Agreement for the client was foreign to the duties of an attorney).

Taking Ms. Kelly's factual allegations as true, Mr. Nichamoff was, at all times, an attorney for Mr. Rembach and Legacy.   Mr. Nichamoff's alleged actions were in the scope of representing his client and were not foreign to the duties of an attorney. Regardless of how colorful Ms. Kelly's allegations may sound, "Merely labeling an attorney's conduct 'fraudulent' does not and should not remove it from the scope of client representation or render it 'foreign to the duties of an attorney.'" *Cantey Hanger, L.L.P. v. Byrd*, 467 S.W.3d at 483.

Following *Thompson v. Deutsche Bank Nat'l Trust Co.*, Ms. Kelly has pleaded Mr. Nichamoff into the attorney immunity defense.  Mr. Nichamoff is entitled to the dismissal of all claims against him under Federal Rule of Civil Procedure 12(b)(6).

## CONCLUSION

Texas does not hold that the attorney immunity defense is limited to litigation. In *Barcelo v. Elliott*, the Texas Supreme Court applied what it then called the privity rule to estate planning, which is not litigation.  In *Cantey Hanger*, the Texas Supreme Court began its analysis of the attorney immunity defense by

citing *Barcelo v. Elliott*.  Looking beyond *Barcelo v. Elliott*, this Court and Texas' intermediate appellate courts have also found attorneys immune from suit for conduct that was outside the scope of litigation.  Texas only requires that the lawyer's action was within the scope of representing a client, and not foreign to the duties of an attorney.

Here, based on Ms. Kelly's allegations, Mr. Nichamoff was the attorney for Mr. Rembach and Legacy, the other parties to Ms. Kelly's agreement to purchase Legacy stock.  Mr. Nichamoff did not represent Ms. Kelly in this transaction.  All of Mr. Nichamoff's alleged conduct was within the scope of representing Mr. Rembach and Legacy, and was not foreign to the duties of an attorney.

Mr. Nichamoff is immune and is entitled to dismissal of the claims against him under Rule 12(b)(6).  The district court's ruling should be reversed, and this Court should render a judgment dismissing Mr. Nichamoff from the suit.

Respectfully submitted,


By:    */s/ Richard G. Wilson*
     Richard G. Wilson
     Texas Bar Number 00794867
16800 Imperial Valley, Suite 360
Houston, Texas 77060
(281) 260-6304 - Telephone
(281) 260-6467 – Facsimile
rwilson@tkalaw.com

Attorney for Appellants

Of Counsel:

KERR WILSON, P.C.
16800 Imperial Valley, Suite 360
Houston, Texas 77060
(281) 260-6304 - Telephone
(281) 260-6467 – Facsimile

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that a true and correct copy of the foregoing instrument was forwarded via certified mail, return receipt requested, hand-delivery, facsimile, or electronic service to all counsel of record that have appeared, on this 13th day of December, 2016:

     Chris Dove
     Locke Lord LLP
     600 Travis, Suite 2800
     Houston, Texas 77002-3095

               /s/ *Richard G. Wilson*
               Richard G. Wilson

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, <u>AND TYPE STYLE REQUIREMENTS</u>**

Under Federal Rule of Appellate Procedure 32(g)(1), the undersigned attorney certifies:

1.   This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B)(i), effective December 1, 2016, because this brief contains 8,047 words and 990 lines.

2.   This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word in Times New Roman 14.

Respectfully submitted,


By:   */s/ Richard G. Wilson*
        Richard G. Wilson

Attorney for Appellant