# Case No. 16-20699

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT
_____

JODIE KELLY,
Plaintiff - Appellee

v.

SETH A.NICHAMOFF,
Defendant- Appellant
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION, CASE NO. 4:15-CV-02563

## REPLY BRIEF OF APPELLANT
## SETH A. NICHAMOFF

RICHARD G. WILSON
KERR WILSON, P.C.
TEXAS BAR NO. 00794867
16800 IMPERIAL VALLEY DRIVE
SUITE 360
HOUSTON, TEXAS 77060
(281) 260-6304 TELEPHONE
(281) 260-6467 FACSIMILE
rwilson@tkalaw.com

**ATTORNEYS FOR APPELLANT
SETH A. NICHAMOFF**

## <u>TABLE OF CONTENTS</u>

**TABLE OF CONTENTS** ........................................................................i

**TABLE OF AUTHORITIES** ............................................................ ii

**SUMMARY OF REPLY** ...................................................................1

**REPLY** ...............................................................................................2

**A.**   **The Attorney Immunity Defense is Not Limited to Litigation.** ................................................................................2

**B.**   **Ms. Kelly and Legacy are not on the Same Side of the Transaction, so she Cannot Bring Claims Against Mr. Nichamoff.** ...........................................................................6

**C.**   **Mr. Nichamoff's Alleged Actions are Not Outside the Scope of Representing Legacy and Mr. Rembach.** ...........................10

**CONCLUSION** ................................................................................17

**CERTIFICATE OF SERVICE** ......................................................18

**CERTIFICATE OF COMPLIANCE** .............................................19

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Taco Bell Corp. v. Cracken*, 939 F. Supp. 528 (N.D. Tex. 1996) ...........................5

*Thompson v. Deutsche Bank Nat'l Trust Co.*,
775 F.3d 298 (5th Cir. 2014) ....................................................................17

## TEXAS CASES

*1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*,
192 S.W.3d 20 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).....................7

*Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398
(Tex. App.—Houston [1st Dist.] 2005, pet. denied) .........................................4, 10

*Barcelo v. Elliott*, 923 S.W.2d 575 (Tex. 1996)................................................4, 5, 8

*Bradt v. West*, 892 S.W.2d 56 (Tex. App.—Houston
[1st Dist.] 1994, writ denied) ...................................................................5

*Cantey Hanger, L.L.P. v. Byrd*, 467 S.W.3d 477
(Tex. 2015) ....................................................... 1, 3, 4, 5, 6, 10, 14, 15, 16

*Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429
(Tex. App.—Houston [14th Dist.] 2000, pet. denied) ...............................5

*Cunningham v. Tarski*, 365 S.W.3d 179
(Tex. App.—Dallas 2012, pet. denied)..................................................16

*Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366
(Tex. App.—Houston [1st Dist.] 2012, pet. denied) ...............................11

*JJJJ Walker, LLC v. Yollick*, 447 S.W.3d 453
(Tex. App.—Houston [14th Dist.] 2014, pet. denied) ...........................13

*McMahan v. Greenwood*, 108 S.W.3d 467 (Tex. App.—
Houston [14th Dist.] 2003, pet. denied)................................................8, 9

*Poole v. Houston & T.C. Ry. Co.,* 58 Tex. 134 (1882) ................................ 10, 12, 13

*Stallworth v. Ayers*, ___ S.W.3d ___, 2016 Tex. App.LEXIS 12884
(Tex. App.—Houston [1st Dist.] Dec. 6, 2016, n.p.h.) ............................................ 4

*Swank v. Sverdlin*, 121 S.W.3d 785 (Tex. App.—
Houston [1st Dist.] 2003, pet. denied) ...................................................................... 7

### SUMMARY OF REPLY

No matter how Ms. Kelly attempts to frame or reframe her argument, this Court's analysis should begin and end with the truthful allegation that Mr. Nichamoff was the attorney representing Mr. Rembach and Legacy, the other side in the stock sale, and was not Ms. Kelly's attorney. As the Texas Supreme Court explained in *Cantey Hanger*, one disregards the nature of the conduct and focuses only on the type of conduct. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 485 (Tex. 2015). "[A]n attorney's conduct may be wrongful but still fall within the scope of client representation." *Id.*

Ms. Kelly argues the attorney immunity defense does not apply the type of transactional work performed by Mr. Nichamoff, but she cites no case to support that argument. Instead, she tries to distinguish the substantial number of cases that have applied the attorney immunity defense to transactional work, or that have provided a basis for applying the attorney immunity defense to transactional work. This Court and Texas courts have made it clear the attorney immunity defense applies to transactional work for the same reasons it applies to litigation. However colorfully Ms. Kelly wants to style her allegations now, she cannot escape that Mr. Nichamoff was Mr. Rembach and Legacy's lawyer, all Mr. Nichamoff's work was in the scope of representing those clients, and the work was not foreign to the

duties of an attorney. Mr. Nichamoff is protected by attorney immunity and Ms. Kelly's claims against him should be dismissed.

## REPLY

In Appellee's Brief, Jodie Kelly ("Kelly") departs from the complaint to make an emotional argument. Seth Nichamoff ("Nichamoff") is now "the man that looked her in the eye and lied about what she was buying." *See* Brief of Appellee Jodie Kelly, at 1. Ms. Kelly also alleges that she regularly stayed at Mr. Nichamoff's house when she visited Houston. *See* Brief of Appellee Jodie Kelly, at 3. Both claims are inaccurate since Ms. Kelly does not allege Mr. Nichamoff lied to her face; ROA.189-208; and alleges she regularly stayed with Paul Rembach, not Mr. Nichamoff. *See* ROA.192.

## A.    The Attorney Immunity Defense is Not Limited to Litigation.

Ms. Kelly argues this Court should limit the attorney immunity defense's use to litigation or litigation-like settings. *See* Brief of Appellee Jodie Kelly, at 23-26. To make her argument, Ms. Kelly attempts to distinguish the numerous cases that have applied the attorney immunity defense to conduct outside litigation. *See id*. While the facts in those cases may differ from the allegations in this case, none of those cases hold the attorney immunity defense is limited to litigation. Ms. Kelly does not cite an opinion in any Texas case that holds such a limitation exists.

Ms. Kelly's argument ignores the holdings in those Texas cases and the majority opinion of the Texas Supreme Court in *Cantey Hanger v. Byrd*.

The test the Texas Supreme Court adopted and applied has only two elements, and holds that an attorney is immune from liability to third parties if: (1) the conduct was within the scope of representing a client, and (2) was not foreign to the duties of an attorney. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d at 485. There is no requirement that the attorney's conduct be in litigation or in a litigation-like setting, whatever that may be. *See id*. By attempting to add this third element to the attorney immunity defense, Ms. Kelly reads a new element into the defense that was not announced in *Cantey Hanger, LLP v. Byrd*. *See id*.

The Texas Supreme Court did note, "Because we conclude that Cantey Hanger's alleged conduct falls within the scope of its duties in representing its client in litigation, we need not consider the attorney-immunity doctrine's application to an attorney's conduct that is unrelated to litigation but nevertheless falls within the ambit of client representation and 'requires the office, professional training, skill, and authority of an attorney.'" *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d at 482 n. 6. However, in the same note the Texas Supreme Court cited cases where intermediate appellate courts have applied the attorney immunity defense outside litigation and it did not disapprove of those cases. *Id*.

3

Ms. Kelly relies on the dissent in *Cantey Hanger, LLP v. Byrd* to support her argument to this Court. The dissent argues the attorney immunity defense is limited to what it refers to as litigation immunity and the judicial proceedings privilege, which are both found in litigation. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d at 487 (Green, J., dissenting). The dissent is not the majority opinion, and is not binding authority in Texas. *Stallworth v. Ayers*, ___ S.W.3d ___, 2016 Tex. App. LEXIS 12884, *11 (Tex. App.—Houston [1st Dist.] Dec. 6, 2016, n.p.h.).

The majority makes no such limitation because it defines the attorney immunity defense beginning with cases that employ what was referred to as the privity argument. *See Cantey Hanger, LLP v. Byrd*, 467 S.W.3d at 481 (relying on *Barcelo v. Elliott*, 923 S.W.2d 575 (Tex.1996)). The majority opinion is binding authority and defines the attorney immunity defense in broader terms than those presented by the dissent or Ms. Kelly. *Id.*

Contrary to Ms. Kelly's position, Texas courts have characterized the privity defense as a narrower form of the attorney immunity defense. *See Cantey Hanger, LLP v. Byrd*, 467 S.W.3d at 481 (citing *Barcelo v. Elliott* and describing attorney immunity as "a more comprehensive affirmative defense protecting attorneys from liability to non-clients"); *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("Perhaps as an offshoot of its privity jurisprudence, Texas case law has discouraged lawsuits against an

opposing counsel if the lawsuit is based on the fact that counsel represented an opposing party in a judicial proceeding."). Further, both *Barcelo v. Elliott* and *Cantey Hanger* rely on the same policy arguments. *Compare Cantey Hanger, LLP v. Byrd*, 467 S.W.3d at 483 ("An attorney is given latitude to 'pursue legal rights that he deems necessary and proper' precisely to avoid the inevitable conflict that would arise if he were 'forced constantly to balance his own potential exposure against his client's best interest.'") *with Barcelo v. Elliott*, 923 S.W.2d 578-78 ("This will ensure that attorneys may in all cases zealously represent their clients without the threat of suit from third parties compromising that representation.").

Additionally, this Court should recognize the phrase "attorney immunity" was not used in several of the earlier cases that are now relied upon as establishing the attorney immunity defense. *See Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 442 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)(relying on *Barcelo v. Elliott* and never using the phrase "attorney immunity"); *Bradt v. West*, 892 S.W.2d 56, 71-72 (Tex. App.—Houston [1st Dist. 1994], writ denied)(holding "[A]n attorney does not have a right of recovery, under any cause of action, against another attorney arising from conduct the second attorney engaged in as part of the discharge of his duties in representing a party in a lawsuit" and never using the phrase "attorney immunity"); *Taco Bell Corp. v. Cracken*, 939 F. Supp. 528, 532-533 (N.D. Tex. 1996)(dismissing the claims

against the attorneys without using the phrase "attorney immunity"). The Texas Supreme Court's use of the term "privity" in *Barcelo v. Elliott* should not differentiate it from these other cases that are accepted as attorney immunity cases.

Ms. Kelly cannot cite this Court to a case or policy argument that supports a different rule for transactional attorneys. As Mr. Nichamoff illustrated in Appellant's Brief, numerous Texas courts and federal courts, including this one, have read attorney immunity to apply to conduct outside litigation. *See* Appellant's Brief, at 16-20. Whether one calls it privity, attorney immunity, or something else altogether, transactional attorneys like Mr. Nichamoff should be protected by the attorney immunity defense so long as they are sued by a third party to the attorney-client relationship and can show: (1) the conduct was within the scope of representing a client, and (2) was not foreign to the duties of an attorney. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d at 485.

## B.     Ms. Kelly and Legacy are not on the Same Side of the Transaction, so she Cannot Bring Claims Against Mr. Nichamoff.

Ms. Kelly's argument that the attorney immunity defense should not be available for transaction attorneys is premised on the assumption that negotiations are not adversarial. ROA.312. It is incorrect to assume that contract or commercial negotiations are not adversarial.

6

In describing contract negotiations in a case before it, one Texas Court of Appeals described the negotiations between two sides on a deal to provide funding to a company as follows:

> Chudnoff, LDNGH, and LDE <u>were adversaries of appellees in negotiating the June and September 1996 contracts</u>. Thus, representations made by Chudnoff, LDNGH, and LDE during the contract negotiations do not justify reliance by Sverdlin and AMPS.

*Swank v. Sverdlin*, 121 S.W.3d 785, 803 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)(emphasis added).  Regardless of whether that case was decided on the attorney immunity defense- there is not an attorney defendant- it establishes that ordinarily, contract negotiations are adversarial.  *Id*.

Similarly, another Texas Court of Appeals described negotiations between the owner of a commercial building and the party from whom the owner sought funding for improvements as follows:

> The parties' previous transaction involving a loan secured by the property was memorialized in an eighty-eight-page, single-spaced Loan Agreement negotiated by the parties' lawyers under circumstances in which <u>each party was looking out for its own interests and operating at arm's length in an adversarial context</u>.

*1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 37 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)(emphasis added).

Even though two sides in commercial transaction may receive a mutual benefit, they are not aligned.  Ms. Kelly would have been negotiating to acquire her interest in Legacy for as low a price as Mr. Rembach and Legacy were willing

to accept. Mr. Rembach and Legacy, on the other hand, would have wanted as much as Ms. Kelly was willing to pay for her shares in order to increase the cash on hand for the business. The opposite sides to the Legacy stock sale had different motivations.

Negotiations in commercial transactions, even when the sides may appear aligned, are a circumstance where conflicts not only could arise but are likely to arise. The Texas Supreme Court has insulated transactional attorneys from liability to presumed beneficiaries of a trust because even though the beneficiaries and the testator's interests are usually aligned, an attorney should not be put in a position of having conflicting duties because of "conflicts that could arise." *Barcelo v. Elliott*, 923 S.W.2d at 578. There is no reason to treat a stock sale differently from estate planning given that conflicts could arise in both circumstances.

There are circumstances where transactional work is not adversarial, and the attorney should not be immune. However, those circumstances are limited to transactions where the sides are truly aligned, and both sides are represented by the same attorney. *McMahan v. Greenwood*, 108 S.W.3d 467, 497 (Tex. App.— Houston [14th Dist.] 2003, pet. denied).

In *McMahan v. Greenwood*, the plaintiff filed suit against the other side in a transaction, as well as the other side's attorney. *McMahan v. Greenwood*, 108

8

S.W.3d at 477.  In permitting the claims against the attorney to go forward, the Court of Appeals explained:

> McMahan contends Henderson was his attorney at the time Henderson made the statements to him regarding his stock ownership in Fine Rides, not at the time of the settlement negotiations. McMahan's affidavit states he and Howard Greenwood went to Henderson to obtain advice on structuring the business and to have him draft the necessary documents for incorporating Fine Rides. According to McMahan, Henderson prepared all of the documents and later provided advice specifically to him on other matters regarding Fine Rides. McMahan expressly stated he understood Henderson to be acting as his attorney."

*McMahan v. Greenwood*, 108 S.W.3d at 496.

Ms. Kelly alleges, "Nichamoff was Rembach's attorney."  ROA.191. Ms. Kelly does not allege that Mr. Nichamoff also represented her, or that she believed Mr. Nichamoff represented her.  *See* ROA.189-208. In fact, Ms. Kelly alleges Mr. Nichamoff previously represented her. ROA.202 (emphasis added).  Ms. Kelly's allegations make it clear that Mr. Nichamoff was not her attorney and was not representing both sides in the Legacy stock sale.  Ms. Kelly's allegations do not bring her within the narrow set of transactions where an attorney would not be protected by attorney immunity; those negotiations where the attorney represents both sides.  *McMahan v. Greenwood*, 108 S.W.3d at 496.

**C.   Mr. Nichamoff's Alleged Actions are Not Outside the Scope of Representing Legacy and Mr. Rembach.**

Ms. Kelly argues that Mr. Nichamoff's conduct is outside the scope of representing Legacy and Mr. Rembach because Mr. Nichamoff is alleged to be a participant in the fraud.  *See* Brief of Appellee Jodie Kelly, at 36.  This allegation is likely based on the rule that "If a lawyer participates in independently fraudulent activities, his action is 'foreign to the duties of an attorney.'"  *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 406 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (quoting *Poole v. Houston & T.C. Ry. Co.,* 58 Tex. 134, 137 (1882)).  The Texas Supreme Court preserved this rule by providing, "Fraud is not an exception to attorney immunity; rather, the defense does not extend to fraudulent conduct that is outside the scope of an attorney's legal representation of his client, just as it does not extend to other wrongful conduct outside the scope of representation. An attorney who pleads the affirmative defense of attorney immunity has the burden to prove that his alleged wrongful conduct, regardless of whether it is labeled fraudulent, is part of the discharge of his duties to his client." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d at 484.

*Essex Crane Rental Corp. v. Carter* and *Poole v. H. & T. C. R'y Co.* illustrate the point where an attorney's conduct reaches outside the scope of representing a client.  In *Essex Crane Rental Corp.*, the attorneys were implicated in a fraudulent transfer scheme and were named by the plaintiff, who was seeking

10

to collect upon an earlier judgment. *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 371 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). There, the attorneys had engaged in conduct that went outside their representation of the client, James McPherson, Sr. *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d at 372. The plaintiff, Essex, was complaining about a pair of sham judgments with an entity, Houston Industrial Investments, LLC, which were set up to shield James McPherson, Sr. from creditors. *Id.* Among the actions taken by the attorneys, "HII entered into two agreed judgments, likewise drafted <u>and signed by Carter and Farley</u> with McPherson, Sr. in the TWC Litigation." *Id.* (emphasis added).

The attorneys in *Essex Crane Corp.* were signing documents for the party. *Id.* In describing why the attorneys were not entitled to summary judgment in *Essex Crane Corp.*, the Court distinguished allegations like those made by Ms. Kelly in this case:

> Essex has not sued Carter and Farley for their representations to it or for their lawful actions within the scope of their professional duty to represent McPherson, Sr. and the McPherson Entities in this litigation. It has sued them for their actions in allegedly drafting and filing fraudulent legal documents for the purpose of conspiring to hide their clients' assets from judgment creditors in violation of TUFTA.

*Essex Crane Rental Corp. v. Carter*, 371 S.W.3d at 382. By signing documents for one of the entities involved in the scheme, the attorneys had stepped out of their role as attorneys and had become parties to the fraud. *Id.*

Similarly, in *Poole v. H. & T. C. R'y Co.* the attorney was not acting as a lawyer, but had taken possession of goods in order to keep the plaintiff from regaining possession.    *Poole v. H. & T. C. R'y Co.*, 58 Tex. 134, 137 (Tex. 1882). As that court described the facts:

> [T]he La Prelles made a fraudulent assignment of the bill of lading to Scott, and at the same time gave him a written order on the station agent at Hearne for the goods.  Armed with these, <u>Scott intercepted the shipment at Hearne, obtained possession of the goods, effaced from the boxes the name of La Prelle & Bro., and inserted that of J. L. Scott & Co. (a bogus firm).</u> He then shipped, by the same line, the goods to the bogus firm at Marlin, taking a bill of lading in that name. When the shipment arrived at Marlin it was delivered to a drayman on his presenting to the agent the J. L. Scott & Co. bill of lading, and was immediately delivered to the insolvent firm of La Prelle & Bro., and thus defeated appellant in getting the rightful possession of his goods.

*Id*. (emphasis added).

The court permitted the claims against Scott acknowledging, "It is said by some of the witnesses that he was the attorney for and representing the La Prelles." *Id*.  In doing so the Court held, "<u>Having assumed the apparent ownership of the goods</u>, for the purpose and with the intention of consummating the fraud upon appellant, he will not be heard to deny his liability to appellant for the loss sustained by reason of his wrongful acts, under the privileges of an attorney at law, for such acts are entirely foreign to the duties of an attorney". *Id*. (emphasis added).  Like the attorney in *Essex Crane*, and unlike Mr. Nichamoff in this case,

the attorney in *Poole* took possession of the goods and acted as their owner, which made him a party to the fraud. *Id.*

In *JJJJ Walker, LLC v. Yollick*, the 14th Court of Appeals reversed a judgment notwithstanding the verdict in an attorney's favor. *JJJJ Walker, LLC v. Yollick*, 447 S.W.3d 453, 455 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). In reversing the judgment in the attorney's favor, the appellate court relied on several actions by the attorney, Greg Yollick, that were outside the scope of representing the client:

> [T]here is more than a scintilla of evidence that Yollick witnessed the board's actions and even directed them. *JJJJ Walker, LLC v. Yollick*, 447 S.W.3d at 462 (emphasis added).

> [I]n signing the Letter Agreement, Yollick was not relying on his professional knowledge and training as an attorney to make a statement in the course of representing his client in an adversarial context; he was simply signing his name, acting as the Bank's agent with actual authority to bind his principal to a promise of future performance. *JJJJ Walker, LLC v. Yollick*, 447 S.W.3d at 469-470 (emphasis added).

Unlike Mr. Nichamoff in this case, the attorney in *Yollick* had directed the board meetings of one of the principals to the transaction, and signed an agreement binding that principal, Merensky Reef, to perform the contract. *Id.* Yollick ceased to act as an attorney and was a party to the transaction when he signed the agreement and controlled Merensky Reef.

Ms. Kelly supposes that the Texas Supreme Court did not intend for the attorney immunity defense to apply to what she calls "fraudulent business deals", but the Court in *Cantey Hanger* established no such exception to attorney immunity.  The Court indicated the opposite with the statement "Merely labeling an attorney's conduct 'fraudulent' does not and should not remove it from the scope of client representation or render it 'foreign to the duties of an attorney.'" *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d at 483.

As shown above in distinguishing the two cases on which Ms. Kelly relies, *Essex Crane* and *Poole*, the fraud that is outside the scope of representing a client is different from what Ms. Kelly alleges.  Ms. Kelly alleges Defendants were "misrepresenting the percentage of shares Plaintiff Kelly was purchasing, the value of LAPD, the value of the shares, the financial condition of LAPD, the accuracy of the financial statements and balance sheet, the nature of transactions between Rembach and LAPD".  ROA.202. Ms. Kelly alleges that Mr. Nichamoff committed fraud by providing her with information and documents during the negotiations.  ROA. 200-201. Ms. Kelly does not allege that Mr. Nichamoff signed any agreements for Legacy, owned an interest in Legacy, or otherwise played a role in the Legacy stock sale that placed Mr. Nichamoff outside the scope of representing Legacy and Mr. Rembach.  ROA. 189-208.

Ms. Kelly's allegations are no different than the allegations in *Cantey Hanger* that the attorneys prepared a false bill of sale in the name of another party in order to purposely shift tax liability from the client to her ex-husband. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d at 480.   While the allegations may sound "wrongful", the Texas Supreme Court has instructed us:

> An attorney is given latitude to "pursue legal rights that he deems necessary and proper" precisely to avoid the inevitable conflict that would arise if he were "forced constantly to balance his own potential exposure against his client's best interest." *Alpert*, 178 S.W.3d at 405 (citing *Bradt*, 892 S.W.2d at 71-72). Because the focus in evaluating attorney liability to a non-client is "on the kind—not the nature—of the attorney's conduct," a general fraud exception would significantly undercut the defense. *Dixon Fin. Servs.*, 2008 Tex. App. LEXIS 2064, 2008 WL 746548, at *8.

*Cantey Hanger, LLP v. Byrd*, 467 S.W.3d at 483.

The Texas Supreme Court took issue with the Fort Worth Court of Appeals, which held the attorney's conduct was outside the scope of representing the client because if its intention. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d at 485.   The Texas Supreme Court explained, "The *type* of conduct described in these two statements is the same; the only difference is the added detail in the latter description that makes the conduct 'wrongful.' Again, an attorney's conduct may be wrongful but still fall within the scope of client representation." *Id*.   The Court then held Cantey Hanger was immune. *Id*.

Mr. Nichamoff was Legacy and Mr. Rembach's attorney. ROA. 191. Mr. Nichamoff's alleged conduct was preparing documents, including the agreements selling the shares to Ms. Kelly; ROA.195; communicating to Ms. Kelly about the closing and the anticipated result; ROA.202; and providing or not providing information and documents to Ms. Kelly. ROA.194. Preparing documents and transmitting information are actions that an attorney would ordinarily perform for a client. *See Cantey Hanger, LLP v. Byrd*, 467 S.W.3d at 485 (finding "preparation of a bill of sale to facilitate transfer of an airplane awarded to its client in an agreed divorce decree was conduct in which an attorney engages to discharge his duties to his client" and was not "foreign to the duties of an attorney."); *Cunningham v. Tarski*, 365 S.W.3d 179, 189 (Tex. App.—Dallas 2012, pet. denied)(setting out the actions taken by the attorney defendant in the course and scope of representing the client, including transmitting documents to the plaintiff).

Ms. Kelly is a third party to the attorney-client relationship between Mr. Nichamoff and Legacy. ROA.191. The type of conduct Ms. Kelly alleges Mr. Nichamoff engaged in was within the scope of representing a client and not foreign to the duties of an attorney, so the attorney immunity defense applies to Mr. Nichamoff. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d at 485. Ms. Kelly's case against Mr. Nichamoff should be dismissed because she pleads him within the

attorney immunity defense. *Thompson v. Deutsche Bank Nat'l Trust Co.*, 775 F.3d 298, 302 (5th Cir. 2014).

### CONCLUSION

Contrary to Ms. Kelly's arguments, Texas does not limit the attorney immunity defense to litigation and what Ms. Kelly refers to as litigation-like conduct. The risk of conflicting duties is just as likely for transactional attorneys in Texas. Mr. Nichamoff has presented numerous cases that apply the attorney immunity defense outside litigation, and the attorney immunity defense should be applied to Mr. Nichamoff's alleged conduct here.

While Ms. Kelly alleges the conduct is fraudulent, the Texas Supreme Court has held the focus is on the type of conduct and not a description like fraud that makes the conduct sound wrongful. Looking to the allegations, the type of conduct Mr. Nichamoff allegedly committed is within the scope of representing his clients and not foreign to the duties of an attorney. The attorney immunity defense applies to Mr. Nichamoff and he should be dismissed from this case.

Respectfully submitted,


By: ___*/s/ Richard G. Wilson*_____
       Richard G. Wilson
       Texas Bar Number 00794867
16800 Imperial Valley, Suite 360
Houston, Texas 77060
(281) 260-6304 - Telephone
(281) 260-6467 – Facsimile
rwilson@tkalaw.com

Attorney for Appellants

Of Counsel:

KERR WILSON, P.C.
16800 Imperial Valley, Suite 360
Houston, Texas 77060
(281) 260-6304 - Telephone
(281) 260-6467 – Facsimile


## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that a true and correct copy of the foregoing instrument was forwarded via certified mail, return receipt requested, hand-delivery, facsimile, or electronic service to all counsel of record that have appeared, on this 27th day of January, 2017:

     Chris Dove
     Locke Lord LLP
     600 Travis, Suite 2800
     Houston, Texas 77002-3095


       _____*/s/ Richard G. Wilson*_____
         Richard G. Wilson

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, <u>AND TYPE STYLE REQUIREMENTS</u>

Under Federal Rule of Appellate Procedure 32(g)(1), the undersigned attorney certifies:

1.  This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B)(ii), effective December 1, 2016, because this brief contains 4,731 words and 547 lines.

2.  This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word in Times New Roman 14.

Respectfully submitted,


By: __*/s/ Richard G. Wilson*__
       Richard G. Wilson
       Attorney for Appellant